UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OKSANA LOPEZ, et al., <br> Plaintiffs, <br> v. <br> HARLEY-DAVIDSON, INC., <br> Defendant. | Case No. 24-cv-04320-RS <br><br> **ORDER DENYING MOTION FOR TERMINATING SANCTIONS** |

## I. INTRODUCTION

Defendant Harley-Davidson, Inc. moves for terminating sanctions based on the conduct of plaintiffs' counsel in causing the motorcycle that is the subject of the product defect claims in this action to be destroyed prior to examination by retained experts on either side. Because the circumstances do not warrant terminating sanctions, the motion will be denied, without prejudice to further consideration at the time of trial as to whether the jury should be given an instruction on the issue.

## II. BACKGROUND

In April of 2022, Marcos Lopez was killed when he lost control of the 2007 Harley-Davidson XL1200L Sportster motorcycle he was riding on Point Reyes-Petaluma Road in Marin County, California. While the facts remain subject to proof at trial, it appears there will be little dispute that the accident happened when the motorcycle's "jiffy stand" kickstand failed to stay in

its retracted position and instead dropped down and contacted the roadway. Plaintiffs are Lopez's estate and family members, who contend Harley-Davidson is liable under either or both of two design defect theories: (1) the design allegedly allows the kickstand to lock in a deployed position and does not ensure folding rearward and upward upon roadway contact while underway, and (2) the design intentionally lacks any interlock safety switch. Plaintiffs assert such switches, which employ sensors in the kickstand assembly to inhibit engine ignition and/or otherwise warn the rider if the stand comes down while the motorcycle is in motion, had been widely implemented in the industry, including in other Harley-Davidson models, by the time plaintiff's motorcycle was manufactured and sold.

Following the accident, plaintiffs' counsel arranged for the subject motorcycle to be picked up and stored by Interstate Services, a vendor specializing in vehicle transportation and storage. The attorneys representing plaintiffs in this action are Sara Peters and Andrew McDevitt of the Walkup, Melodia, Kelly & Schoenberger law firm ("Walkup"). During the pendency of this action, other attorneys at Walkup were representing plaintiffs in another motorcycle accident case where the decedent was surnamed Lopez (the D. Lopez case).

Interstate Services issued invoices for storage fees for the subject motorcycle. Walkup's bookkeeper correctly assigned six such invoices to this case, but erroneously assigned five other invoices to the D. Lopez case. When the D. Lopez case resolved, the Walkup attorneys assigned to that matter undertook to dispose of the motorcycle involved in that case. Although that motorcycle was a Yamaha, not a Harley-Davidson, and was not stored at Interstate Services, the Walkup attorneys relied on the storage invoices that had been incorrectly assigned by the firm's bookkeeper, and worked with Interstate Services to have the (wrong) motorcycle destroyed.

Harley-Davidson is correct that there were numerous points along the way where the error could have been, and likely should have been, discovered. Nothing in the record, however, supports any inference that plaintiffs or any of the attorneys at the Walkup firm intended to dispose of the Harley-Davidson motorcycle at issue in this case. Nor is there any basis to conclude that plaintiffs treated their duty to preserve evidence cavalierly, which distinguishes this case from

1  many others involving spoliation that was not part of a calculated effort to conceal, but which
2  nevertheless resulted from a blameworthy state of mind. The loss of the evidence in this case arose
3  from intentional acts—negligence that may have caused harm requiring mitigation—but it was
4  fundamentally a mistake.

## III. DISCUSSION

Courts are vested with inherent powers arising out of "'the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)). The Ninth Circuit has specifically recognized trial courts have "inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence." *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993). These inherent powers include the ability to levy appropriate sanctions against a party who prejudices its opponent through the spoliation of evidence. *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006); *Apple Inc. v. Samsung Electronics Co., Ltd.*, 881 F.Supp.2d 1132, 1135 (N.D.Cal. 2012) (citing *Glover*, 6 F.3d at 1329). A trial court's discretion regarding the form of a spoliation sanction is broad, and sanctions can range from the minor, such as the awarding of attorney fees, to the more serious, such as dismissing claims or instructing the jury that it may draw an adverse inference. *Apple*, 881 F.Supp.2d at 1136 (citing *Leon*, 464 F.3d at 958, 961; *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 386–87 (9th Cir. 2010)) (some citations omitted). The determination of an appropriate sanction "is assessed on a case-by-case basis." *Io Group, Inc. v. GLBT Ltd.*, 2011 WL 4974337, at *3 (N.D.Cal. 2011) (quoting *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001)) (internal citations omitted).

To determine whether spoliation occurred, the majority of courts use some variation of the so-called *Zubulake* test. *See Apple*, 881 F.Supp.2d at 1138 (citing *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 215 (S.D.N.Y.2003) ("*Zubulake IV* ")). That test has three elements: "(1) that the

party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a 'culpable state of mind;' and (3) that the evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Zubulake IV*, 220 F.R.D. at 220. If spoliation is found, then courts generally consider three factors to determine whether and what type of sanctions to issue: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party." *Nursing Home Pension Fund v. Oracle Corp.*, 254 F.R.D. 559, 563 (N.D.Cal.2008) (quoting *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir.1994)) (courts should choose "the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim"). After considering these factors, a court may decide to defer or decline to grant sanctions, despite a finding of spoliation. *See, e.g., Hamilton v. Signature Flight Support Corp.*, 2005 WL 3481423, at *8 (N.D.Cal. 2005) (finding spoliation but declining to impose adverse inference sanctions because of lack of prejudice).

    Here, there is no dispute that plaintiffs, through their counsel, had an obligation to preserve the motorcycle, and that it was potentially relevant to the claims and defenses in this action. It is less clear that counsel acted with a "culpable" state of mind—again, there is no basis to infer any intent to destroy the subject motorcycle. That said, given that the firm's practice at least in this instance led it to be responsible for more than one client motorcycle at the same time, it was incumbent on the firm to ensure it had sufficient safeguards in place to prevent destruction of evidence from the wrong case. Accordingly, the conduct arguably crosses the threshold of "spoliation."

    While the fault may all be assigned to plaintiffs, the accidental nature of the loss of evidence weighs against punitive sanctions. The primary concern in these circumstances is to mitigate any potential prejudice that may have resulted to Harley-Davidson. It is not possible, of course, to say with complete certainty what the lost evidence might have shown, and it therefore may be appropriate to draw certain inferences in Harley-Davidson's favor. Dismissal of the action,

however, would represent a windfall to Harley-Davidson, not merely mitigation.

It appears plaintiffs likely will be able to show that the immediate cause of the accident was the contact between the kickstand and the ground. While Harley-Davidson presumably may attempt to show there were additional contributing factors to the accident (e.g. excessive speed, reckless operation) and/or to the injuries suffered (e.g., defects in Lopez's helmet), those challenges to plaintiffs' case would not appear to rest on anything that could be discovered from examining the motorcycle.

The viability of plaintiffs' theory that the product was defectively designed because it lacked an interlock safety switch also does not turn on anything that could have been discovered from examining the subject motorcycle. There is no dispute this model was not built and sold with such a device—whether that constitutes an actionable design defect remains to be determined, but the particular condition of this motorcycle at the time of the accident has no bearing on the question. Plaintiffs' other theory—that the design was defective because it allows the kickstand to lock in a deployed position, also can largely be proved or disproved without access to the actual kickstand of the subject motorcycle. Harley-Davidson could prevail, for example, either by showing that the design simply does not fail in the way plaintiffs contend, or that even if it sometimes can, it is not a liability-producing "defect" under applicable legal standards.

Harley-Davidson contends, however, that inspection of this particular kickstand might have uncovered additional relevant information such as any post-sale modifications or repairs that cannot be observed in the existing photographs of the motorcycle and the kickstand, or perhaps other indications as to what exactly happened in this instance. While the possibility that such evidence existed but was lost when the motorcycle was destroyed cannot be completely discounted, it is not sufficient to require dismissal of plaintiffs' case.

The motion for terminating sanctions is denied.[1] At the time of trial, Harley-Davidson may

---

[1] The motion to seal portions of plaintiffs' brief and the supporting declaration is also denied. Even assuming other material in the underlying documents might contain Harley-Davidson's confidential information meeting the standards for sealing, the limited and generalized excerpts in

propose a jury instruction regarding inferences jurors may, but are not required, to draw as to what additional evidence might have shown had the motorcycle been available for expert inspection. Whether any such instruction will be given, and in what form, will be decided at trial.

**IT IS SO ORDERED**.

Dated: November 4, 2025

_____
RICHARD SEEBORG
Chief United States District Judge

---

plaintiffs' filings do not. Plaintiffs' unopposed motion for leave to file a sur-reply is granted.

CASE NO. 24-cv-04320-RS

6