UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OKSANA LOPEZ, et al.,

          Plaintiffs,

    v.

HARLEY-DAVIDSON, INC.,

          Defendant.

Case No. 24-cv-04320-RS

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

In April of 2022, Marcos Lopez was killed when he lost control of the 2007 Harley-Davidson XL1200L Sportster motorcycle he was riding on Point Reyes-Petaluma Road in Marin County, California. There is no dispute that the accident happened when the motorcycle's side stand failed to stay in its retracted position and instead dropped down and locked in the down position after it contacted the roadway. Plaintiffs are Lopez's estate and family members, who contend defendant Harley-Davidson Motor Company, Inc. is liable under either or both of two design defect theories: (1) the design allegedly allows the side stand to lock in a deployed position and does not ensure folding rearward and upward upon roadway contact while underway, and (2) the design intentionally lacks any interlock safety switch.

Harley-Davidson moves for summary judgment arguing plaintiffs will "never be able to prove that Harley-Davidson manufactured the side stand assembly that was on the Motorcycle at the time of the accident, much less that this side stand assembly had the same design or

United States District Court
Northern District of California

functionality as the Motorcycle's original Jiffy Stand." Harley-Davidson does not contend Lopez or any of the prior owners of the motorcycle completely replaced the original equipment "Jiffy Stand" with a completely different side stand. Rather, Harley-Davidson's contention is that enough parts of the original Jiffy Stand had been replaced, modified, and/or installed incorrectly that a fact finder could not reasonably conclude it remained a Harley-Davidson product for purposes of liability under a design defect theory. Pursuant to Civil Local Rule 7-1(b), the motion is suitable for disposition without oral argument and the hearing set for July 16, 2026, is vacated.

Harley-Davidson's arguments are directed at the issue of whether it should face liability for the failure of the side stand to remain in the upright position. Plaintiffs' claims, however, turn on whether Harley-Davidson may be liable for designing the side stand to lock in the down position without sufficient measures to address the resulting hazard if the motorcycle is traveling when the stand locks. Because Harley-Davidson has failed to show there are no triable issue of fact under the theories plaintiffs are advancing, its motion must be denied.

## II. BACKGROUND

The basic facts regarding the accident are not in dispute.[1] On the morning of April 9, 2022, Marcos Lopez, a licensed, experienced rider, set out for a Saturday ride through West Marin with his friend Shane Agueros. It was a route they had traveled together regularly for two years. They rode south on Point Reyes-Petaluma Road at approximately 45 to 50 mph, in clear daylight on dry pavement.

Behind them, Brook Davis, a truck driver, followed in his pickup. Davis observed the motorcycle's side stand extending out and contacting the road, bouncing back in, then extending again. "When he would drive straight or to the right, it would be out. And when he made a left-

---

[1] Some of the details in this summary come from an accident report that the parties agree is not independently admissible. It appears the facts are likely to be confirmed in upcoming depositions, but any uncertainty in the present record does not undermine the conclusion that summary judgment should be denied.

hand corner, it would hit against the road and then come back in . . . because it was bouncing off the road." (McDevitt Decl., Ex. 7, Davis Dep. at 28:18–24).

Davis tried to get Lopez's attention. He sounded his air horn five to eight times, flashed his headlights, swerved in his lane, and waved his arm out the window. Lopez looked back two or three times and looked down toward his left side—Davis speculated Lopez was, "trying to place where the sound was coming from." As Lopez approached a series of three asphalt patches just before a leftward curve, the side stand fully extended and locked out. The stand left a continuous 126-foot scrape on the asphalt, consistent with it remaining locked against the road despite the rearward friction force of the pavement.

With the stand extended, the motorcycle could not lean far enough left to navigate the curve. Lopez lost control, departed the roadway, and struck trees. He died at the scene. Plaintiffs contend that if the motorcycle had been equipped with a $17.52 interlock Harley-Davidson had already designed and installed on its European and police-fleet Sportsters, the engine would have lost power when the stand deployed, and the motorcycle would have gradually slowed to a stop over approximately 400 feet, well before the curve.

### III. LEGAL STANDARD

Summary judgment is proper "if the pleadings and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323 (citations and internal quotation marks omitted). If it meets this burden, the moving party is then entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of the case

United States District Court
Northern District of California

with respect to which he bears the burden of proof at trial. *Id*. at 322-23.

The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). To preclude the entry of summary judgment, the non-moving party must bring forth material facts, *i.e.*, "facts that might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The court must draw all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight to be accorded particular evidence. *Masson v. New Yorker Magazine*, Inc., 501 U.S. 496 (1991) (citing *Anderson*, 477 U.S. at 255); *Matsushita*, 475 U.S. at 588 (1986).

It is the court's responsibility "to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec. Service v. Pacific Elec. Contractors*, 809 F.2d 626, 631 (9th Cir. 1987). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

## IV. DISCUSSION

Harley-Davidson contends the available evidence[2] shows "the side stand assembly had been extensively modified to such an extent that, even if [it] still retained some of Harley-Davidson's original components—which the parties and their experts could neither confirm or deny given Plaintiffs' counsel's destruction of the Motorcycle—whatever side stand assembly actually was on the Motorcycle at the time was in no way a Harley-Davidson product for which Harley-Davidson could be found liable." Specifically, Harley-Davidson contends that at the time

---

[2] The inadvertent destruction by plaintiffs' counsel of the subject motorcycle prior to inspection by expert witnesses has been addressed by prior order. Giving Harley-Davidson the benefit of all reasonable inferences as to what it might have been able to discover and show had the motorcycle not been destroyed does not alter the analysis or result of this order.

of the crash, the "clevis pin" that is intended to hold the stand was installed upside down, the clevis pin was not installed with bushings, and the spring mounting tab on the side stand was bent. More generally, Harley-Davidson insists, "alterations, damage, and omissions from the side stand and related components indicate that at some point prior to the crash the side stand was removed then re-installed incorrectly without components that are critical to the intended function of the side stand."

The shortcoming in Harley-Davidson's position is that its evidence is all directed at showing that "[t]hese improper installations and missing components significantly reduced spring tension and increased allowable movement of the side stand, *preventing it from reliably retracting and staying in the fully stowed position during riding.*" Dkt. 99 at 5 (emphasis added). Plaintiffs' design defect theory is not premised on an alleged failure by Harley-Davidson to design and produce a side stand that presented little or no risk of deploying during operation of the motorcycle (although such a design would also eliminate most of the risk of accidents like that here). Rather, plaintiffs contend that upon selecting a side stand design with an inherent and known risk of deploying during operation, it was incumbent on Harley-Davidson to implement mitigating safety features, such as ignition interlock device, or a design under which the stand would automatically "fold rearward and upward" in the event of ground contact while the motorcycle is moving.[3]

Plaintiffs have pointed to evidence that Harley-Davidson knew from its own testing that the side stand design was subject to a risk that it would not stay in the retracted position during riding, and that it could fail to retract upon contact with the ground in such instances. Harley-Davidson may argue at trial that plaintiffs lack evidence that the side stand failed to stay retracted in this particular instance as the result of any design flaw, given the evidence of modifications. Harley-Davidson has offered no evidence or argument, however, that the modifications to the side

---

[3] Plaintiffs contend 49 CFR § 571.123 expressly requires stands to fold rearward and upward upon ground contact during operation. Harley-Davidson insists its Jiffy Stand complies with this regulation, but does not suggest there is no factual dispute on the point.

United States District Court
Northern District of California

stand had any bearing on its *locking* feature, or on the absence of any mitigating safety measures. To the contrary, the evidence suggests the stand locked as designed based on features in the stand and in the frame of the motorcycle, unaffected by any of the identified modifications to the stand. At a minimum, that presents a triable issue of fact. Furthermore, of course, the absence of an ignition interlock is completely independent from any modifications to the side stand.

Whether plaintiffs can prove at trial that the absence of an ignition interlock or a design for automatic retraction is an actionable design defect remains to be seen. Harley-Davidson may also be able to argue a lack of causation, if the side stand failed to remain stowed as the result of unforeseeable intervening causes. There is, however, no basis to grant judgment in favor of Harley-Davidson as a matter of law.

## V. CONCLUSION

The motion for summary judgment is denied. The pre-trial conference is continued to September 21, 2026. Jury selection and trial will commence on Tuesday, September 28, 2026.

**IT IS SO ORDERED**.

Dated: July 6, 2026

_____
RICHARD SEEBORG
United States District Judge

CASE NO. 24-cv-04320-RS

6